William P. QUINN, Plaintiff, Appellant,

v.

COUNTRY CLUB SODA CO., INC. et al., Defendants, Appellees.

No. 80–1583.

United States Court of Appeals, First Circuit.

Argued Dec. 3, 1980.

Decided Feb. 5, 1981.

[redacted]

Jeffrey L. McCormick, Springfield, Mass., with whom Robinson, Donovan, Madden & Barry, P. C., Springfield, Mass., was on brief, for appellant.

Caroline W. Spangenberg, Springfield, Mass., with whom Charles S. Cohen and Bulkley, Richardson & Gelinas, Springfield, Mass., were on brief, for appellees.

Before ALDRICH, CAMPBELL and BOWNES, Circuit Judges.

LEVIN H. CAMPBELL, Circuit Judge.

Plaintiff-appellant Quinn, a former employee of defendant Country Club Soda Co., Inc. ("the Company"), sued the Company, Country Club Soda Co., Inc. Retirement Plan and Trust ("the Plan"), and certain of the Plan's trustees, alleging violations of section 404 of the Employee Retirement Income Security Act of 1974 (ERISA), 29 U.S.C. § 1104, and alleging subject matter jurisdiction pursuant to 29 U.S.C. § 1132. Defendants moved to dismiss for lack of subject matter jurisdiction and failure to state a claim; alternatively, they moved for summary judgment. Following some discovery and a hearing on the motions, the district court entered judgment for defendants.

The pertinent allegations of the complaint are as follows. Quinn was continually employed by the Company from September 1960 until November 1, 1976, when he retired. On December 29, 1960, the Company established a profit-sharing retirement plan and trust, which called for annual contributions by the Company and provided that each full-time salaried office employee

of the Company would become a member of the Plan as of the date his employment commenced. Since Quinn alleged himself a "salaried office employee," he was "therefore, a member of this retirement plan and trust." After the termination of his employment in November 1976, Quinn made a demand for benefits under the Plan, which was not acknowledged. The Plan was terminated as of December 31, 1976 and during 1977 its assets of $339,557 were distributed to Plan participants; Quinn did not participate in this distribution.

In support of their motions, defendants filed an affidavit of Maurice Elion, a trustee of the Plan since its inception in 1960 and "for many years" President of the Company, stating,

"3. Plaintiff (Mr. Quinn) was never considered a participant in the Plan.

"4. At the inception of the Plan in 1960, I told those employees who were not included in the Plan, including Mr. Quinn, that they were *not* participants in the Plan. I also told Mr. Quinn on numerous subsequent occasions that the Plan had been approved by the IRS, that there was no intention to change it, and that he was not going to be made a participant.

"5. Instead, Mr. Quinn, like the other sales managers and some other employees of the company, was given increased bonuses and other compensation and benefits in lieu of participation in the Plan. Part of those benefits included participation in another plan of Country Club Soda Co., Inc.

"6. Upon my own personal knowledge, Mr. Quinn was well aware for many years prior to January 1, 1975 that he was not included in the Plan. I certainly told him this many, many times."

Quinn submitted a counteraffidavit in which he averred only that, (1) he had served as "Vice President and General Sales Manager" of the Company from September 1960 until November 1, 1976; (2) he was given an office and used the office regularly during his employment; and (3) he was a salaried employee and not paid at an hourly rate or on a commission basis. Neither Quinn nor defendants submitted a copy of the terms of the retirement plan and trust.

The district court entered judgment for defendants on the ground that plaintiff's claims, if any, "arose when he was excluded from the Plan at its inception in 1960 or shortly thereafter when he was notified of the exclusion," and were therefore governed by state law. In so holding, the court relied on *Cowan v. Keystone Employee Profit Sharing Fund*, 586 F.2d 888 (1st Cir. 1978), in which we held that federal jurisdiction under 29 U.S.C. § 1132 is limited by 29 U.S.C. § 1144, which provides in relevant part that ERISA does not supersede state law "with respect to any cause of action which arose, or any act or omission which occurred, before January 1, 1975."

Plaintiff's "cause of action," as such, would not have arisen until November 1976, when he retired and claimed eligibility for benefits under the Plan. Numerous cases stand for the logical proposition that a cause of action for wrongful denial of pension plan benefits does not accrue until a request for benefits is denied. *See Cowan, supra*, 586 F.2d at 895, and cases cited therein. Defendants argue that plaintiff might have sued the Company as early as 1960 to force it to make contributions to the trust on plaintiff's behalf, and perhaps could also have sued for a declaratory judgment of his rights under the Plan. Even so, such causes would not be the same as the present one, which requires proof that, having met all necessary conditions by 1976, plaintiff then requested and was denied payment. We do not think it can be said the instant cause of action, predicated on an actual denial of benefits, arose prior to January 1, 1975.

Section 1144, however, renders ERISA inapplicable not only with respect to "causes of action" arising prior to January 1, 1975, but also with respect to "any act or omission" which occurred before that date. The phrase "act or omission" has been said to "refer[ ] to those significant facts which give rise to a claim but which fall short of

establishing a cause of action," *Winer v. Edison Brothers Stores Pension Plan*, 593 F.2d 307, 313 (8th Cir. 1979); *see Reuther v. Trustees of Trucking Employees Welfare Fund*, 575 F.2d 1074 (3d Cir. 1978), and seems to have been inserted "to permit courts to apply state law, even if the cause of action accrued after January 1, 1975, in cases where that result most fairly accommodates the interests of all affected parties—the beneficiaries, participants, and fiduciaries of and contributors to ERISA trusts," *Bacon v. Wong*, 445 F.Supp. 1189, 1192 (N.D.Cal.1978). The clear practical import of the act or omission clause is to prevent past conduct of pension plan fiduciaries and contributors from being judged retroactively under the standards established by ERISA simply because the conduct generates consequences subsequent to the ERISA effective date that give rise to what is, technically, an independent "cause of action."

■ The gist of the complaint is that the language of the retirement plan and trust creates a generic class of beneficiaries ("full-time salaried office employees") which, in Quinn's view, must be read to include him,[1] and that the Plan's trustees failed in their duty as fiduciaries to safeguard his interests. But plaintiff filed nothing to contradict the assertions in Mr. Elion's affidavit that Quinn was never considered a participant in the Plan, that he and others were told at the Plan's inception that they were not participants, and that plaintiff was told on numerous subsequent occasions prior to January 1, 1975 that he was not, and would not be made, a participant. Neither did plaintiff contradict the assertions in the same affidavit that he, like the other sales managers and some other employees of the Company, was given "increased bonuses and other compensation and benefits in lieu of participation in the Plan."

On the basis of the uncontradicted facts, therefore, when the Plan's trustees denied plaintiff's claim for benefits in 1976, and later did not include him in the distribution of the Plan's assets, they were simply following through on a position consistently taken and communicated to plaintiff from the time the Plan was established—that he was not a member; that he was not entitled to have the Company contribute on his behalf; and a *fortiori* that he would not become entitled to benefits under that Plan. The post-1975 events were, therefore, but the inexorable consequences of acts and omissions taken long before.[2]

We hold that as plaintiff's basic quarrel is with a policy and course of conduct instituted, fully delineated, and communicated to him many years prior to 1975, state law is controlling and the district court lacked subject matter jurisdiction over this suit. *Cowan, supra*, 586 F.2d 888. Since the court below was without jurisdiction, it should not have entered judgment for defendant but should have dismissed the complaint.[3] We therefore vacate the judgment

---

1. Quinn's argument is based on the premise that since he drew a salary and used an office he was a "salaried office employee." Defendants' position (implicit in Mr. Elion's affidavit), however, is that sales managers such as Mr. Quinn were not "salaried office employees" within the meaning of the retirement plan and trust.

2. We by no means suggest that a trustee's mere interpretation of the terms of a pension plan or a company's inadequate contribution to a retirement trust would in any and all circumstances constitute "significant facts" that, having occurred prior to January 1, 1975, would bar suit under ERISA based on a post-1975 denial of benefits. Here, however, the pre-1975 events constituted a fully communicated decision, made at the time the Plan was first insti-

tuted, and thereafter consistently adhered to, that plaintiff was not among those covered by the Plan.

3. As noted in *Cowan, supra*, 586 F.2d at 895, the disposition of cases such as this one fall within a "grey area" where dismissal might be termed either "jurisdictional" or "on the merits." *See Bell v. Hood*, 327 U.S. 678, 66 S.Ct. 773, 90 L.Ed. 939 (1946). Principles of res judicata, however, reinforce our conclusion that dismissal for lack of subject matter jurisdiction is the proper course here. Our decision in this case is predicated on the rationale that plaintiff has alleged, if anything, a cause of action under state law. The district court's entry of summary judgment could, however, be taken to cast doubt on plaintiff's right to reinst-

and remand with directions to dismiss the complaint for lack of subject matter jurisdiction.

*So ordered.*

stitute his claims before a state tribunal. *See* 1B Moore's *Federal Practice* ¶ 0.405; *cf. id.* ¶ 0.409 (2d ed.). This would be an improper result given the district court's lack of jurisdiction to adjudicate the state law claim, even if properly alleged.