[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
MAY 31 2000
THOMAS K. KAHN
CLERK

_____

No. 99-12191

_____

D. C. Docket No. 99-01085-CV-G-S

JOHN T. BURKS, CLAUDIA COOK, et al.,

Plaintiffs-Appellants,

versus

AMERICAN CAST IRON PIPE COMPANY,

Defendant-Appellee.

_____

Appeal from the United States District Court
for the Northern District of Alabama

_____

**(May 31, 2000)**

Before BIRCH and BARKETT, Circuit Judges, and ALARCON[*], Senior Circuit Judge.

PER CURIAM:

---

[*]Honorable Arthur L. Alarcon, Senior U.S. Circuit Judge for the Ninth Circuit, sitting by designation.

Appellants/Plaintiffs are a group of retirees and their dependents who claim that American Cast Iron Pipe Company ("Cast Iron") promised them health benefits, including free prescription drugs, for life. They base their claims on oral representations, including a promise by Cast Iron's former president, Steve Moxley, in the 1950's that "[t]he reason we're not getting the same raises as U.S. Steel is getting is because we're putting it into medical so you'll get free drugs when you retire."

In addition to these oral representations, the plaintiffs allegedly relied on a written plan description from 1973 promising lifetime health benefits without reserving the right to amend the plan. The plaintiffs included a copy of a 1973 plan booklet in the record excerpts provided on appeal; however, the 1973 document does not appear to be in the actual district court record and will not be considered.[1]

Relying on these alleged representations and plan documents, the former employees worked for Cast Iron until their retirement. They all retired before September 2, 1974, the day the Employee Retirement Income Security Act (ERISA) was enacted. For over twenty years, the retirees received free medical care and medications through Cast Iron's health clinic and in-house pharmacists.

---

[1]At any rate, the 1973 booklet is not helpful to the plaintiffs, as it does not appear to provide for free prescription drugs.

Then in 1993, a change in financial accounting standards (FAS No. 106) increased the negative effect of the benefit plan upon Cast Iron's financial statements.[2] Cast Iron reacted by amending its benefit plan to require that the plaintiffs pay 25% of the cost of their drugs and medicines. To soften the harm to the retirees, Cast Iron increased pensions by forty dollars a month.

Unhappy with this change, the plaintiffs sued in Alabama state court, alleging breach of contract, fraud, unjust enrichment, and conversion. Their complaint was based not only on the required co-pay but also on claims of price-gouging by Cast Iron's pharmacists, who allegedly charged almost 900% of the Wal-Mart price for the same medication. Although Cast Iron formed a committee in response to the retirees' complaints about pricing, the plaintiffs claimed Cast Iron's actions were inadequate. They sought injunctive relief to ensure that Cast Iron's pharmacists would charge competitive prices.

Cast Iron removed the case to federal district court based on ERISA preemption. That same day it filed a motion to dismiss or in the alternative for

---

[2]For discussions of the negative effect of FAS No. 106 on retiree health benefits, see, *e.g.*, *Wise v. El Paso Natural Gas Co.*, 986 F.2d 929, 932-33 and n.3 (5th Cir. 1993); Gregory J. Ossi, Comment, *It Doesn't Add Up*, 13 J. Contemp. Health L. & Pol'y 233, 240 (1996) (noting that "[b]y the end of 1994, almost half of the companies in the United States had modified retiree health benefits because of FAS 106").

summary judgment, supported by an affidavit of its Director of Human Resources, Leann Barr. Ms. Barr's affidavit attached thirteen excerpts from various versions of the health benefit plan (the "Plan") and other plan documents dating from 1966 through 1993. These excerpts noted that benefits were not vested and reserved the right to change or terminate benefits. Full plan documents were not provided.

Shortly after receiving Cast Iron's motion, the district court entered a scheduling order giving the plaintiffs fourteen calendar days to submit briefs, affidavits and any other materials opposing summary judgment. The plaintiffs moved to continue consideration of the summary judgment motion until they had a chance to conduct discovery. Supporting their motion was an affidavit from their counsel stating that discovery was necessary to review the entire plan documents, of which the plaintiffs had received only excerpts, and to investigate the extent and nature of oral representations regarding benefits. The plaintiffs also moved to remand the case to state court on the grounds that ERISA did not preempt their claims.

The district court simultaneously denied the plaintiffs' motions and granted summary judgment against them. The court ruled that ERISA preempted the plaintiffs' claims because "[h]ealth care plans established by employers before Congress enacted ERISA and that were maintained thereafter became subject to ERISA in 1975." The court implicitly ruled that ERISA's enactment wiped out

4

responsibilities based on actions or misrepresentations predating ERISA. It further ruled that pre-ERISA employee handbooks and plan documents did not create vested rights to health benefits.

The plaintiffs appealed. Because the district court improperly applied post-ERISA substantive law to rights created before the enactment of ERISA, we affirm in part and reverse in part.

DISCUSSION

We review the grant of summary judgment *de novo*, using the same standards as did the district court. *See Clark v. Coats & Clark, Inc.*, 990 F.2d 1217, 1222 (11th Cir. 1993). The judge's decision not to grant a continuance under Rule 56(f), Federal Rules of Civil Procedure, is reviewed for abuse of discretion. *See Carmical v. Bell Helicopter Textron, Inc.*, 117 F.3d 490, 493 (11th Cir. 1997). We review the denial of a remand motion *de novo*. *See Butero v. Royal Maccabees Life Ins. Co.*, 174 F.3d 1207, 1211 (11th Cir. 1999).

Central to all the issues on appeal is the extent to which ERISA preempts the claims of plaintiffs who all retired before ERISA's effective date. When Congress enacted ERISA in 1974, it greatly changed the responsibilities for sponsors and administrators of employee benefit plans. Aware of the potential unfairness of imposing ERISA's requirements retroactively, Congress provided that ERISA "shall

5

not apply with respect to any cause of action which arose, or any act or omission which occurred, before January 1, 1975." 29 U.S.C. § 1144(b)(1). This provision contains inherent tensions where substantive rights were created before ERISA's effective date but the cause of action arose after it. *See, e.g., Rochford v. Joyce*, 755 F. Supp. 1423, 1426-27 (N.D. Ill. 1990) (discussing different circuits' approaches to § 1144(b)(1) and citing cases). In *Woodfork v. Marine Cooks & Stewards Union*, 642 F.2d 966 (5th Cir. Apr. 1981), the predecessor to this court resolved the tensions by ruling that whenever a cause of action for employee benefits accrues after January 1, 1975, ERISA preempts the mechanism for seeking relief. *See id.* at 970. This reading of the statute promotes Congress's goal of providing a federal forum for employee benefit plan participants. *See id.* at 972.

The plaintiffs' claims accrued at the earliest after 1993, when the Plan was amended to require co-payment. *See Vaughter v. Eastern Air Lines, Inc.*, 817 F.2d 685, 692 (11th Cir. 1987) (employee benefit claims accrued when participants "became aware of the facts necessary to make their claims"). Alternatively, their causes of action accrued even later, when they applied for 100% coverage of their medications and were denied. *See Paris v. Profit Sharing Plan for Employees of Howard B. Wolf, Inc.*, 637 F.2d 357, 361 (5th Cir. Feb. 1981) (ERISA "cause of action does not accrue until an application [for benefits] is denied"). Therefore the

plaintiffs must bring their claims under the section of ERISA that creates a cause of action to recover benefits, enforce plan rights, or clarify entitlement to future benefits. *See* 29 U.S.C. § 1132(a)(1)(B).[3] Since ERISA "super-preempts" section 1132(a)(1)(B) claims even if they are brought in the guise of state law claims, the judge properly denied the plaintiffs' motion for remand. *See, e.g., Metropolitan Life Ins. v. Taylor*, 481 U.S. 58, 63-64 (1987) ("any civil complaint raising this select group of claims is necessarily federal in character"). But that does not end the analysis.

The plaintiffs' substantive rights to retirement benefits, including retiree health benefits, were created before ERISA existed. ERISA cannot apply retroactively to govern the rights and responsibilities that attached to the Plan before ERISA's effective date. Cast Iron recognizes this, for it argues in its brief that ERISA's summary plan description requirements did not apply retroactively to the 1973 plan booklet. When participants' rights form before ERISA's effective date, the court as a matter of federal common law must interpret the plan "in light of a worker's pre-ERISA state law rights." *Woodfork*, 642 F.2d at 973. *See also Sprague v. General Motors Corp.*, 133 F.3d 388 (6th Cir. 1998) (en banc). In discussing liability for

---

[3]Although the record is not fully developed, if Cast Iron's in-house pharmacists did indeed unreasonably overcharge for prescription drugs, potential additional causes of action might exist under 29 U.S.C. § 1132(a)(2) or (a)(3).

retiree health benefits based on summaries that pre-dated ERISA's summary plan description requirements, the *Sprague* court stated: "If the plaintiffs have any cause of action based on [pre-ERISA] summaries, it is probably not one based on ERISA." *Id.* at 400. *See also Jameson v. Bethlehem Steel Corp. Pension Plan*, 765 F.2d 49, 51-52 (3d Cir. 1985) ("ERISA's substantive provisions are not to be used to determine the law at the time of incidents occurring before January 1, 1975."). In the present case, the district court erred by applying ERISA substantive law retroactively to pre-1975 responsibilities. Accordingly, we remand for the district court to consider whether, under the law applicable to welfare benefit plans when the plaintiffs retired, Cast Iron promised to cover 100% of the plaintiffs' drug expenses–and whether that promise was unalterable and irrevocable.

Extrinsic evidence may be necessary to illuminate plan documents if they are ambiguous under state law. *Cf. Stewart v. KHD Deutz of Am. Corp.*, 980 F.2d 698, 702-703 (11th Cir. 1993) (interpreting collective bargaining agreement under the Labor Management Relations Act and Georgia law: when the agreement promised benefits "during retirement" but also retained the right to "'amend, modify, suspend or discontinue'" employee benefit plans, it was ambiguous). Since discovery will be necessary to address these issues, the district court abused its discretion in failing to grant a continuance under Rule 56(f).

8

Since the court may determine that the Plan could be amended with respect to the plaintiffs after ERISA's effective date and that post-ERISA amendments apply to them, we address the effect of ERISA substantive preemption on the scope of discovery and the propriety of summary judgment. The district court denied the plaintiffs' Rule 56(f) motion for continuance because "[d]iscovery will not take this action out of the parameters of ERISA." The court apparently believed that no amount of discovery could enable the plaintiffs to oppose summary judgment once ERISA preempted their claims. But even if ERISA does establish the parameters that govern this action, the plaintiffs are not necessarily dead in the water.

The plaintiffs allege that written plan documents entitle them to lifetime benefits and that they have been deprived of those benefits. In addition, they allege price-gouging by in-house pharmacists. As discussed above, these facts support claims under 29 U.S.C. § 1132(a)(1)(B) and possibly § 1132 (a)(2) and (a)(3). The plaintiffs should be allowed to amend their complaint to state ERISA claims[4] and to conduct discovery, at least sufficient for them to review the applicable plan documents

---

[4]*See Woodfork v. Marine Cooks & Stewards Union*, 642 F.2d 966, 976 (5th Cir. Apr. 1981) (judge abused discretion in failing to grant motion for leave to amend complaint to state ERISA claims; court can *sua sponte* allow plaintiff to amend state-law complaint to state a claim under ERISA).

9

in their entirety, to enable them to oppose Cast Iron's motion for summary judgment.

ERISA preempts and does not recognize claims based on oral representations that contradict unambiguous written plan terms. *See, e.g., Alday v. Container Corp. of Am.*, 906 F.2d 660, 665-66 (11th Cir. 1990). Accordingly, the need to scrutinize plan documents in their entirety is crucial, particularly when those documents are in the exclusive control of the defendant. The plaintiffs' counsel properly noted this need in his Rule 56(f) affidavit. In addition, discovery regarding price-gouging and misrepresentation may be necessary to oppose summary judgment on fiduciary claims.

CONCLUSION

ERISA provides the exclusive cause of action for the plaintiffs' claims, which are based on promises that were allegedly broken in the 1990's, well after ERISA's effective date. As a matter of federal common law, however, the district court should look to state law to answer the substantive question of whether the plaintiffs retired (before ERISA's effective date) under a promise to pay lifetime prescription drug benefits that could not be amended or terminated. The district court should allow discovery before considering summary judgment against the plaintiffs. Accordingly, the denial of the motion for remand is AFFIRMED. The grant of summary judgment

against the plaintiffs is REVERSED. The denial of the plaintiffs' motion for continuance of consideration of summary judgment is REVERSED.